Craig L. SHERMAN, Petitioner,

v.

UNITED STATES, et al., Respondents.

Civ. A. No. 91–33–3–MAC(DF).

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 4, 1991.

Bennett T. Willis, Jr., Macon, Ga., Roger L. Sherman, Overland Park, Kan., for petitioner.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., for respondents.

FITZPATRICK, District Judge.

This petition for a writ of habeas corpus presents the court with an important question concerning the armed forces at a time when our nation is engaged in a war in the Middle East. More specifically, the issue is whether the President has the authority under 10 U.S.C. § 673c to involuntarily extend the term of enlistment for an active member of the Air Force. The court holds that he does, and so the petition is DENIED.

## I. BACKGROUND

The petitioner, Craig L. Sherman, is a sergeant in the United States Air Force. He enlisted for an eight-year term in the Air Force Reserve and agreed to serve on active duty for not less than four years. This was later changed so that he was to serve four years' active duty only. He entered active duty on November 28, 1986, and was assigned to the 51st Combat Communications Squadron, 5th Combat Communications Group at Robins Air Force Base, Georgia. His term of active duty was to expire on November 27, 1990.

An unforeseeable series of events intervened. On August 2, 1990, Iraq invaded and occupied Kuwait. On that same day, President George Bush issued Executive Order 12722, declaring a national emergency. Executive Order 12728, issued on August 22, delegated the President's authority under 10 U.S.C. § 673c to the Secretary of Defense. That same Order allows the Secretary of Defense to redelegate this authority without the approval of the President. The Secretary passed this power to the Secretary of the Air Force, who in turn delegated it to the Assistant Secretary for Manpower, Reserve Affairs, Installations and Environment, who then announced the suspension of those provisions of law and Air Force policy relating to the separation, retirement and promotion of personnel deemed to be in an essential category by the Secretary of Defense. This same procedure was followed with later executive orders authorizing the calling up of other reserve units and the extension of their terms of service.

This plan, known as a "Stop Loss" program, originally applied to personnel with dates of separation or retirement between October 2 and December 31, 1990, although the latter date was given as tentative in an announcement of September 17, 1990. This same announcement identified those personnel whose units or Air Force Specialty Codes (AFSC), which are numerical designations of job titles, were essential to national security and therefore subject to the Stop Loss program. Both Petitioner's unit and AFSC were listed as essential. A later statement extended Stop Loss indefinitely past December 31 and deleted Petitioner's AFSC from the list of critical skills, although his unit remained designated as essential. After the deadline declared by the United Nations for Iraq to leave Kuwait passed on January 15, war began on the next day. A January 25, 1991, announcement removed Petitioner's unit from the list of critical units but adding his AFSC back to the list of critical skills.

These events had a direct impact on the Petitioner. His unit was shipped to Saudi Arabia on August 16, 1990, but he was left behind due to a broken finger. Before the Stop Loss program was implemented he volunteered, for unexplained reasons, to rejoin his unit, but permission was denied since he had so little time left on his enlistment contract and did not wish to extend it. After the Stop Loss order went into effect, Petitioner in the latter part of October or the first of November orally applied for a hardship waiver, which was denied. He then took three weeks' leave to be married. After receiving his second Stop Loss order, Petitioner filed a written request for a waiver on January 10, 1991, and then again went on leave, returning on January 25, the same day this petition was filed. On January 28, Petitioner received notice that his

second request was also denied and that he would shortly be shipped overseas.

Since this is a matter requiring the immediate attention of this court due to the fact that Petitioner's orders have already been sent directing him to depart Robins Air Force Base for duty with Operation Desert Storm in the Kingdom of Saudi Arabia on February 8, 1991, the court will not delay its ruling on the writ of habeas corpus and will instead issue its order forthwith.

## II. DISCUSSION

■ The first issue raised by the Petitioner concerns which statute controls his case. He contends that the controlling statute is 50 App. U.S.C. § 454(c)(1), which forbids involuntary extensions of enlistments without a declaration of war or national emergency by Congress, while the government relies on 10 U.S.C. § 673c. The court is persuaded that Section 673c controls, in part because it was enacted at a later date, and the court is willing to believe that Congress was well aware of the existence of Section 454 while considering Section 673c, and so took the older statute into consideration. Contrary to Petitioner's claims, the court finds that Section 673c acts as a specific exception to the prohibition on involuntary extensions found in Section 454, a broader and more general statute. Section 673c therefore controls this case.

■ The question to be decided by the court is whether Section 673c gives the President the authority to extend the enlistment of an active duty Air Force enlisted man as well as a member of the Air Force Reserve. The statute reads:

Notwithstanding any other provision of law, during any period members of a reserve component are serving on active duty pursuant to an order to active duty under authority of section 672, 673, or 673b of this title, the President may suspend any provision of law relating to promotion, retirement, or separation applicable to any member of the armed forces who the President determines is essential to the national security of the United States.

10 U.S.C.A. § 673c(a) (West Supp.1990). (Sections 672, 673 and 673b, to which the statute refers, concern reserve components generally, the ready reserve and selected reserve, respectively.) The answer to the question asked above is "yes."

The Petitioner contends that since the statute begins by referring to members of a reserve component, the rest of it must be read to concern the reserves *only*. This court cannot, however, read the statute in that manner. Although the statute begins by referring to the reserves, it ends by referring to "any member of the armed forces who the *President* determines is essential to the national security of the United States." (emphasis added). A more logical reading would lead to the conclusion that Congress intended to provide for the authority of the President to extend the enlistment of members of the armed forces, regular or reserve, *if and when* "members of a reserve component are serving on active duty pursuant to an order to active duty." The statute ends after stating that the President may suspend any provision of law relating to separation applicable to *any member of the armed forces* who the President determines is essential to national security.

The legislative history of the statute clearly indicates the will of Congress by the use of the following language:

The effectiveness of the President's call-up authority is weakened further by the normal separation or retirement of *regular* and reserve personnel. At the very time that he has augmented the active forces to respond to a crisis, the President lacks the authority to prevent the loss of *regular* and reserve personnel who become eligible to separate or retire from the military services....

Sen.Rep. No. 98–174, 98th Cong., 1st Sess., 198, *reprinted in* 1983 U.S.Code Cong. & Admin.News, 1081, 1098 (emphasis added).

Furthermore, adopting the Petitioner's reading of Section 673c would lead to an illogical and inequitable result. It would make little sense to say that the President is allowed to call up or extend the enlistments of reservists in case of war but that

he cannot do so for active duty personnel. Although the Petitioner has claimed that extending his enlistment would cause him undue hardship, this court is well aware of the even greater hardships experienced by members of the reserves who have been taken away from their families and civilian careers. In a time of war it would be terribly unfair and unreasonable to allow such disruptions to affect reservists, but not members of the regular armed forces.

■ The Petitioner has also challenged the determination that he is essential to national security as required by the statute. The court is not willing to challenge this finding. In a time of war, the military decisions made by the President and the executive branch carry a special weight. Such decisions have been left to the discretion of the President by the very language of Section 673c, and this court would be overstepping its bounds to challenge such a decision. Moreover, although Petitioner has labored mightily to show that he is not essential, the government has presented convincing evidence that he is.

In a nutshell, the Petitioner has asked this court to order the termination of his contract as an enlisted man in the United States Air Force in time of war, a decision which would trigger lawsuits and claims by other military personnel similarly situated and bring chaos to orderly military planning. If the law were clear that Petitioner is entitled to be discharged, then this court would order him discharged. In this opinion of this court, however, the law does not favor the Petitioner and it would be unreasonable to read the statute that way. The language of the statute, its legislative history, the basic notions of fairness and the discretionary decisions made by the executive branch all convince the court that the Petitioner's case must fail. Accordingly, the petition for a writ of habeas corpus is DENIED.

SO ORDERED.